IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN REGELMAN, | ) |
| | ) Civil Action No. 10 - 849 |
| Plaintiff, | ) |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| v. | ) |
| | ) |
| WARDEN RAYMOND RUSTIN; C.O. | ) |
| MARTINEAU; C.O. WEIS; 3 JOHN DOE | ) |
| C.O.s; and ALLEGHENY COUNTY JAIL, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM ORDER**

Plaintiff, a prisoner at the Allegheny County Jail, commenced this action on May 17, 2010 pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against the following Defendants: Warden Raymond Rustin; Correctional Officer Martineau; Correctional Officer Weis; three John Does; and the Allegheny County Jail. Plaintiff filed an original complaint (ECF No. 3), Amendments and Corrections (ECF No. 10), and an Amended Complaint (ECF No. 13). In these pleadings, Plaintiff makes claims of excessive force and retaliation with respect to an incident that occurred on April 12, 2010. Specifically, Plaintiff claims that he was returned to the Allegheny County Jail on April 12, 2010 following a three day stay at Mercy Hospital. (Doc. #13). Although the deputy sheriff radioed ahead for a wheelchair to take Plaintiff from the garage area to intake, Plaintiff was denied the use of the chair. When he entered the building, Plaintiff was grabbed from behind by Correctional Officer John Doe No. 1 and received two hits to the upper back, was grabbed by the shirt collar and picked up by the shirt and pushed into cell number 1, pushed into the door and then pushed into the cell. John Doe Nos. 2 and 3 verbally assaulted Plaintiff from the intake door to Cell No. 1.

Then, Plaintiff requested medical assistance by hitting the emergency medical button but Correctional Officer John Doe responded by telling Plaintiff that if he pushed it again, he would have more problems than he wanted. Plaintiff claims that he received further verbal threats by Officer Martineau and Defendant Weis because he filed a grievance regarding the assault.

Plaintiff alleges that he was kept in Cell No. 1 for twelve hours without medical attention, food or water. He further claims that he was moved from intake to processing for several more hours without medical attention and food the next morning before being returned to the infirmary and then rushed to the hospital by ambulance and EMTs.

At Count One, Plaintiff alleges excessive force under the Eighth Amendment against the three John Does. At Count Two, Plaintiff alleges that Defendant Martineau made verbal threats and subjected him to verbal abuse. Additionally, Plaintiff alleges that Defendant Weis made verbal threats and retaliated against him for filing a grievance by shining a flashlight in Plaintiffs eyes. Finally, Plaintiff names Warden Rustin in his supervisory role and alleges he failed to act in the grievance procedure. Plaintiff seeks compensatory damages, punitive damages, and declaratory relief.

A. Standard of Review

On November 5, 2010, Defendants filed a Motion to Dismiss (ECF No. 44). Pursuant to Fed. R. Civ. Proc. 12(b)(6), in deciding a motion to dismiss, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753

2

n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983.'" Coronado v. Goord, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).[1] It is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

---

1. *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

In addition, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688 ).

Finally, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See* Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).

B. The Mandatory Exhaustion Requirement

Defendants first argue that Plaintiff's claims must be dismissed because he failed to have exhausted his available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing a civil action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows.

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement set forth in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner). In each of these cases, the court of appeals announced a bright-line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66.

A unanimous Supreme Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated exhaustion of all available administrative remedies, regardless of the relief offered through those administrative

5

procedures. In addition, in Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

Plaintiff has submitted a significant amount of documenttion showing that he has attempted to exhaust his claims (ECF No. 29-1, pp. 29-1). Moreover, he claims that his complaints have been ignored, and, therefore, he was unable to comply with the mandatory exhaustion requirement. On review of a motion to dismiss, I must accept as true all factual allegations in the complaint. The exhaustion requirement of § 1997e(a) is an affirmative defense to be pleaded by the Defendant. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Plaintiff's allegations are somewhat similar to those made by the prisoner in Camp v. Brennan, 219 F.3d 279, 281 (3d Cir. 2000). In Camp, an inmate filed a federal civil rights complaint alleging that prison guards used excessive and unnecessary force when they assaulted and stun gunned him while extracting him from his cell. In his complaint, the inmate asserted that he attempted to file a grievance after the incident but his complaint was not processed because he was on grievance restriction. In addition, the inmate claimed that many of the correctional officers had told him that none of his grievances would get to the Grievance Coordinator because they were complaining about the officers' co-workers. For those reasons, the inmate stated that he stopped trying to file a grievance because no one would help him. In response to the defendants' motion to dismiss his complaint, the inmate argued, inter alia, that the circumstances that he had to deal with removed him from the statutory reach of the exhaustion requirement in 42 U.S.C. § 1997e. The court of appeals agreed with this position holding that "under Section 1997e(a) the prisoner need

only exhaust such administrative remedies 'as are available.' " *Id*. The Court alternatively found that, because the inmate's allegations had been fully examined on the merits by the ultimate administrative authority, it was not necessary that the inmate "jump through any further administrative hoops to get the same answer." *Id*.

Construing the facts in the light most favorable to plaintiff, as this court is required to do in deciding a motion to dismiss, this court can not conclude that Defendants' motion to dismiss should be granted on the basis of their assertion that Plaintiff failed to have exhausted his available administrative remedies. As the Third Circuit court held in Ray, a prisoner/plaintiff need not plead and prove compliance with the exhaustion requirement in his complaint. Moreover, Plaintiff's documents suggest that he did make some efforts to seek review of his claims through the grievance procedure but that he did not receive adequate responses to seek further review. Thus, Defendants' Motion to Dismiss will not be granted on this basis.

With regard to Defendants Rustin, Martineau, Weis and the ACJ, Plaintiff can not state a claim upon which relief may be granted notwithstanding any failure to exhaust. *See* 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."). Thus, the remaining claims are discussed below.

### C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state

7

law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

1. Defendant Warden Rustin

Plaintiff seeks to impose liability against Defendant Rustin based on his responsibilities as Warden of the ACJ. To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. *See also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances

8

under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id.* (quoting Chinchello, 805 F.2d at 133). *See also* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

In Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989), the Court of Appeals for the Third Circuit concluded that a judgment could not properly be entered against the defendant based on supervisory liability absent an identification of a specific supervisory practice or procedure that the defendant failed to employ. "[U]nder the teachings of City of Canton it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [the plaintiff] identify specifically what it is that [the defendant] failed to do that evidences his deliberate indifference." *Id.* With respect to supervisory liability for Eighth Amendment claims, plaintiffs must first identify a "specific supervisory practice or procedure" that the defendant supervisor failed to employ, and then prove the following: 1) the existing custom and practice without that specific practice or procedure created an unreasonable risk; 2) the supervisor was aware that the unreasonable risk was created; 3) the supervisor was indifferent to that risk; and 4) the injury resulted from the policy or practice. Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample, 885 F.2d at 1118). The absence of a policy or failure to establish a policy can give rise to liability. Natale v. Camden County Corr. Facility, 318 F.3d 575, 585 (3d Cir. 2003).

The simplest way for a plaintiff to make out such a claim is to demonstrate a supervisor's failure to respond appropriately when confronted by a pattern of injuries similar to the plaintiff's, thereby suggesting deliberate indifference on the part of the supervisor. Sample, 885 F.2d at 1118. The Court of Appeals for the Third Circuit further instructed that is not the only way to make out

9

such a claim, as "there are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." Beers-Capitol, 256 F.3d at 134 (citation omitted). Thus, for Plaintiffs' claim seeking to hold Defendant Rustin liable for a deficient policy, he must show either that Defendant Rustin failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's or that the risk of constitutionally cognizable harm was so great and so obvious that the risk and the failure of Defendant Rustin to respond supports a finding that the four-part test stated above is met. None of Plaintiff's allegations support liability against Defendant Rustin in this regard.

With respect to Defendant Rustin, Plaintiff has not alleged that he was aware of a "pattern" of injuries. One such instance does not constitute a "pattern of past occurrences" as contemplated by Sample. Nor has he alleged that the risk of constitutionally cognizable harm was so great and so obvious that Defendant Rustin must have known of the excessive risk but was indifferent to it. Although the facts may support liability on a theory of negligence, it can not be inferred that Defendant Rustin "knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm," Farmer v. Brennan, 511 U.S. 825, 846 (1994), based on his alleged failure to have read and/or heeded the warning label on the machine. As the Court of Appeals for the Third Circuit has explained, it is not enough to allege that defendant should have recognized the excessive risk and responded to it; a Plaintiff must show that the defendant must have recognized the excessive risk and ignored it. Beers-Capitol, 256 F.3d at 138 (citing Farmer). Here, Plaintiff's allegations do not show that Defendant Rustin must have recognized an excessive risk and ignored it.

Moreover, it is well settled that, to the extent that Plaintiff seeks to hold Warden Rustin

liable for his alleged failure to act in his capacity within the grievance procedure, such allegation fails to state claim. *See* Heleva v. Kramer, 214 Fed. App'x 244 (3d Cir. 2007) ("Prisoners do not have a constitutional right to prison grievance procedures."); Abuhouran v. Acker, Civil No. 04-2265, 2005 WL 1532496, *5 (E.D. Pa. June 29, 2005) ("Where the only role of supervisory prison officials in the alleged misconduct of their subordinates is the denial of a plaintiff's administrative grievances and a concomitant failure to act to remedy the alleged misconduct, Bivens liability is unjustified"). While prisoners have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts, which is not compromised by the failure of the prison to address his grievances. Wilson v. Horn, 971 F.Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1988) (Table). Thus, Defendants' Motion to Dismiss will be granted as to Plaintiff's claims against Defendant Rustin.

2. ACJ

Plaintiff also seeks to impose liability against the Allegheny County Jail (ACJ). A prison or correctional facility is not a person within the meaning of § 1983. *See* Jones v. Luzerne County Correctional Facility, Civil No. 10-359, 2010 WL 3338835, 3 (M.D. Pa. Aug. 23, 2010) (citing Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973) and Sponsler v. Berks County Prison, Civ. No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb.28, 1995)). In this regard, the ACJ is part of Allegheny County; it has no separate existence. Thus, Plaintiff's claim will be construed as asserting liability against Allegheny County.

In this regard, in Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability

may not be premised on the mere fact that the governmental unit employed the offending official, *i.e.*, through application of the doctrine of respondeat superior. Instead, the Court concluded that a governmental unit may be liable under section 1983 only when its "policy" or "custom," whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, directly inflicted the injury. Monell, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible, *i.e.*, acts that the municipality has officially sanctioned or ordered. *Id*. In Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986), the Court further clarified that "municipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id*. at 483 (citation omitted).

Moreover, mere identification of a policy or custom is not enough to establish municipal liability; a plaintiff also must establish causation. In this regard, a plaintiff carries the burden of demonstrating a "plausible nexus" or "affirmative link" between the municipality's custom or policy and the constitutional deprivation at issue. Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 405 (1997) (a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights).

As set forth above, the County cannot be liable for any constitutional deprivations suffered by Plaintiff unless "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton, 489 U.S. at 385. The Supreme Court has instructed that

"policy" is made when a decisionmaker possessing final authority over the subject matter issues an official proclamation, policy, or edict. Pembaur, 475 U.S. at 481. Custom can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. Monell, 436 U.S. at 690. *See also* Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).

In the case at bar, Plaintiff has not identified any policy or custom attributable to the County. In this regard, Plaintiff has not set forth any evidence of any similar incidents that have occurred in the past, other than the one in which he was involved, to prove some pattern of conduct that could establish a custom or policy. It is well settled that a single incident of unconstitutional behavior, without any direct involvement by a municipal policy maker, is not sufficient to impose municipal liability. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986); City of Oklahoma v. Tuttle, 471 U.S. 808, 822 (1985); Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) (plaintiff's mere assertion of the incident at issue, plus vague assertions about the police department's failure to investigate other wrongdoings, did not provide sufficient proof of a policy or custom to satisfy the dictates of section 1983). Thus, Plaintiff's allegations are insufficient to state a claim upon which relief may be granted against Allegheny County. Consequently, the Motion to Dismiss will be granted as to the ACJ.

3. <u>Defendants Martineau and Weis</u>

Plaintiff alleges that Defendant Martineau made verbal threats and subjected him to verbal abuse. Additionally, Plaintiff alleges that Defendant Weis made verbal threats and retaliated against him for filing a grievance by shining a flashlight in Plaintiffs eyes.

It is well established that allegations of threats or verbal harassment, without injury or

damage, do not state a claim under 42 U.S.C. § 1983. *See, e.,g.*, Burkholder v. Newton, 116 Fed. App'x 358, 360 (3d Cir. 2004); Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir.1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir.1999); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.) (mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations), cert. denied, 464 U.S. 998 (1983); Wilson v. Horn, 971 F.Supp. 943 (E.D. Pa. 1997) (verbal abuse and harassment, although not commendable, does not rise to the level of a constitutional violation), *aff'd*, 142 F.3d 430 (Table) (3d Cir. 1998); Maclean v. Secor, 876 F.Supp. 695, 698 (E.D. Pa.1995).[2]

No matter, then, how reprehensible the conduct alleged in the complaint may be, such conduct, if as alleged, is not violative of rights secured to the Plaintiff under the Constitution or the laws of the United States. Accordingly, Defendant's Motion to Dismiss will be granted as to this claim. *Accord* Collins v. Cundy, 603 F.3d 825, 826 (10th Cir.1979) (allegation that sheriff threatened to hang prisoner did not state claim for constitutional violation); Maclean v. Secor, 876 F.Supp. 695, 698 (E.D. Pa.1995) (threat by BOP guard to "see to it" that "pieces of s-" like plaintiff would be "taken care of" was not adequate to make out constitutional claim).

Moreover, as Defendants point out, shining a flashlight on Plaintiff fails to state a claim. *See* Stewart v. Jackson, Civil No. 07-0094, 2007 WL 3360046 (E.D. Ark. Nov. 8, 2007) (dismissing complaint for failure to state a claim where prisoner alleged the officer shined a flashlight in his face as prisoner suffered no actual injury).

---

2 Moreover, there is no violation of a constitutional right even if prison guards are alleged to have made a racially disparaging remark. Morgan v. Ward, 699 F. Supp. 1025 (N.D.N.Y. 1988) (use of racial slurs do not support a claim under the Eighth Amendment); Williams v. Pecchio, 543 F.Supp. 878 (W.D.N.Y. 1982) (verbal harassment, including the use of the term "nigger," does not support a section 1983 claim).

Finally, Plaintiff's allegations do not state a claim for retaliation against Defendant Weis. It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

With respect to the first factor, it is well settled that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. Rauser, 241 F.3d at 333. Rather, the first requirement a Plaintiff must show is that the conduct which led to the alleged retaliation was constitutionally protected. *Id*.

The second element requires a prisoner to show that he suffered some "adverse action" at the hands of the prison officials. A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See* Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Adverse actions that are sufficient to support a retaliation claim include filing false misconduct reports, Mitchell v.

Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser, 241 F.3d at 333, and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third factor requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. This may be established by evidence of a temporal proximity between the prisoner's protected activity and the defendant's adverse action; however, the timing of the alleged retaliatory action must be suggestive of retaliatory motive. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996). It is Plaintiff's burden to prove that the Defendants were motivated by retaliation. Hannon v. Speck, Civil No. 87-3210, 1988 WL 131367, at *4 (E. D. Pa. Dec. 6, 1988) ("In bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor ... was as he alleged.") (internal quotes and citation omitted), *aff'd*, 888 F.2d 1380 (3d Cir. 1989) (Table).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

In establishing the elements of a retaliation claim, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (internal citations omitted).

Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Finally, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999); Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) (holding that a *de minimis* retaliatory act is outside the ambit of constitutional protection).

A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. *See* Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about a guard's misconduct). Plaintiff claims that the retaliation was the result of his filing grievances. Thus, he has alleged the first element of a retaliation claim.

With respect to the second, element, he must allege that he suffered some "adverse action" at the hands of the prison officials. Here, Plaintiff claims that Defendant Weis shined a flashlight in his eyes. This allegation is insufficient to meet the second element.

Moreover, the third element requires Plaintiff to allege that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. The only allegation Plaintiff makes to support this element is his assertion that the Defendant knew that he had filed grievances. To show a causal connection, a plaintiff must allege "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or

(2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007). *See also* Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

The fact of having filed a grievance, without more, plausibly constitute a substantial or motivating factor for adverse action. Here, Plaintiff has failed to allege a precise chronology sufficient to infer causation. While "timing plus other evidence may be an appropriate test where the temporal proximity is not so close as to be 'unduly suggestive,' " Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000), Plaintiff has not set forth any other allegation in support of his retaliation claim, despite having amended his complaint twice already. Thus, Defendants' Motion to Dismiss should be granted as to this claim. *Cf*. Alexander v. Fritch, 396 Fed. App'x 867 (3d Cir. 2010) (holding that prisoner could not sustain retaliation claim based on employees' failure to provide favorable parole recommendation).

Pursuant to the discussion above, Defendants' Motion to Dismiss will be granted except as to Plaintiff's allegations in Count One of his Amended Complaint of excessive force against the three John Does. An appropriate order follows.

**AND NOW**, this 19th day of May, 2011;

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 44) is **GRANTED EXCEPT** as to Plaintiff's allegations of excessive force against the three John Does.

**AND IT IS FURTHER ORDERED** that the court will not give Plaintiff an opportunity to file yet another amended complaint as doing so would be futile in this action. *See* Haagensen v.

Supreme Court of Penn., 390 Fed. App'x. 94, 98 (3d Cir. 2010).

                                                            /s/ Lisa Pupo Lenihan
                                                            Lisa Pupo Lenihan
                                                            United States Magistrate Judge

cc:    John Regelman
        JY 2841
        State Correctional Institution
        Camp Hill
        P.O. Box 200
        Camp Hill, PA 17001-8837